UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Case No. |
| v. ) | 5:13-cr-58-JMH |
| ) | |
| BUFORD LEE LYVERS, JR., ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

\*\*\*

This matter is before the Court on Defendant's motion to suppress statements that he made to State Trooper Jeremy Devasher during the stop of his vehicle on February 14, 2013, and the firearm recovered from his vehicle. [D.E. 16, D.E. 28]. The United States has responded, and this Court conducted an evidentiary hearing on the matter on July 1, 2013. [D.E. 31; D.E. 24]. This motion is thus ripe for review. For the reasons which follow, Defendant's motion to suppress will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In February 2013, the London Police Department and the Federal Bureau of Investigation were lawfully monitoring the phone of Rondale McCann pursuant to a court-ordered wiretap. [D.E. 24 at 3—4]. During one of the phone calls, an officer listened as Mr. McCann spoke with a man then

unknown, but now identified as Defendant Lyvers. [D.E. 24 at 4]. From this conversation and others, the officers determined that Jason Bledsoe would deliver a firearm to Defendant on Mr. McCann's behalf. [D.E. 24 at 7—8]. The officers believed that the exchange would take place at the Wal-Mart on Nicholasville Road in Lexington, Kentucky, on February 14, 2013. [D.E. 24 at 7].

On February 14, 2013, the officers captured the exchange of the firearm between Mr. Bledsoe and Defendant through video surveillance in the Wal-Mart parking lot.[1] [D.E. 24 at 12—13]. The officers had previously contacted State Trooper Jeremy Devasher and asked him to be prepared to follow Defendant's vehicle when it left the Wal-Mart parking lot after the exchange. [D.E. 24 at 31]. When the officers confirmed that Defendant's vehicle left the parking lot, Trooper Devasher began following him. [D.E. 24 at 32]. Trooper Devasher followed Defendant for several minutes, and testified that he confirmed that Defendant was not wearing a seat belt from several angles; however, he waited until he reached a safe location to actually initiate a traffic stop. [D.E. 24 at 33]. Although Trooper Devasher was aware that Defendant was most likely

---

[1] The United States included a copy of this video recording along with its brief.

in possession of a firearm, his only stated reason for initiating a traffic stop was that Defendant was not wearing his seatbelt. [D.E. 24 at 33].

Once pulled over, Trooper Devasher informed Defendant that he stopped him for failing to wear his seatbelt, asked him for his license, registration, and proof of insurance, and ran a check on all three. [D.E. 24 at 34]. Trooper Devasher discovered that Defendant's license was expired and that he had prior criminal convictions for drug trafficking. [D.E. 24 at 34]. While he was in his vehicle conducting these checks, Trooper Devasher also called K-9 Trooper Trevor Harris and asked him to bring his certified drug dog to the scene. [D.E. 24 at 34].

When Trooper Devasher returned to Defendant's car, he gave Defendant citations for failure to wear a seatbelt, operating a motor vehicle on an expired driver's license, and failing to notify the Department of Transportation of an address change. [D.E. 24 at 35]. He explained to Defendant that while he was free to leave, he could not be permitted to drive away in his car given his expired driver's license. [D.E. 24 at 34]. Therefore, Trooper Devasher gave Defendant an option to either have someone retrieve him and his vehicle or allow the vehicle to be towed. [D.E. 24 at 34]. Defendant chose to wait for

someone to come pick up both himself and the vehicle. [D.E. 24 at 35].

However, before someone arrived to pick up Defendant and his vehicle, Trooper Harris arrived. [D.E. 24 at 35]. Trooper Harris walked his dog around the vehicle, and the dog alerted to the rear passenger door. [D.E. 24 at 36]. Trooper Devasher conducted a search the vehicle, finding a firearm in the front passenger floorboard. [D.E. 24 at 37]. He placed Defendant under arrest for being a felon in possession of a firearm. [D.E. 24 at 37]. Defendant now moves to suppress the firearm and any statements he made during and after the stop on the basis that the stop and search violated his Fourth Amendment rights.

## II. DISCUSSION

In Defendant's brief, he makes two primary arguments as to why the firearm found in his vehicle and his statements made both during the stop and after his arrest should be suppressed. First, he argues that Trooper Devasher did not have probable cause to stop Defendant's vehicle for failure to wear a seatbelt, as he contends that window tint made it impossible for Trooper Devasher to determine whether or not Defendant was wearing his seatbelt. Second, Defendant argues that the stop lasted longer than necessary to effectuate the purpose of the

4

stop, and, thus, was in violation of his Fourth Amendment rights. Because both of these arguments fail, Defendant's motion to suppress will be denied.

**A. PROBABLE CAUSE EXISTED FOR THE STOP**

Pursuant to the Fourth Amendment, unreasonable searches and seizures are prohibited. U.S. CONST. AMEND. IV. Because traffic stops are seizures within the meaning of the Fourth Amendment, its protections apply to the instant matter. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

As an initial matter, the United States vociferously argues that Trooper Devasher had probable cause to make the stop based off of his knowledge that Defendant was very likely in possession of a firearm. [D.E. 31 at 6—8]. The Court acknowledges that, given the totality of the circumstances in this case, it is quite likely that Trooper Devasher had probable cause to stop Defendant based off of the transaction in the Wal-Mart parking lot. However, this argument misses the point. Trooper Devasher's *stated reason* for initiating a traffic stop was Defendant's failure to wear a seatbelt. [D.E. 24 at 41—43]. Indeed, Trooper Devasher made it extremely clear at the evidentiary hearing that although he had the authority to stop Defendant on the basis of the firearm transaction, he

5

observed the seatbelt violation and decided to pull him over on that basis alone. [D.E. 24 at 41–43]. Thus, this Court's inquiry is limited to whether Trooper Devasher had probable cause to stop Defendant for failure to wear a seatbelt.

The Sixth Circuit has long held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (quoting *United States v. Bradshaw,* 102 F.3d 204, 210 (6th Cir. 1996)) (internal quotation marks omitted). Further, "[t]he requirements of probable cause are satisfied where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76 (1949)) (internal quotation marks omitted).

In support of his argument that Trooper Devasher did not have probable cause to stop his vehicle, Defendant submitted into evidence several photographs of the vehicle that Defendant was driving at the time of the stop. [D.E.

24 at 69—71]. Defendant's wife testified that she took the photographs from several different angles after Defendant's arrest, and stated at the hearing that in each photograph, a person is seated in the driver's seat. [D.E. 24 at 69—71]. Using these photographs, collectively admitted as Exhibit 3, Defendant argues that Trooper Devasher could not have had probable cause to stop Defendant because it is impossible to tell whether the person in the driver's seat is wearing a seatbelt. [D.E. 25 at 5].

The Court agrees with Defendant that it is difficult to determine whether the person in the photographs seated in the driver's seat is wearing a seatbelt because of the excessive window tint on the vehicle. However, this observation by the Court by no means ends the inquiry as to whether Trooper Devasher had probable cause to stop Defendant's vehicle. Quite simply, there is uncontradicted testimony from Trooper Devasher that he observed Defendant not wearing his seatbelt from several viewpoints as Defendant changed lanes on Nicholasville Road. [D.E. 24 at 32]. By contrast, Defendant offered no testimony that he was, in fact, wearing a seatbelt, and the photographs standing alone cannot be used to prove otherwise. For example, the Court cannot be sure that the lighting conditions on the day that Defendant's wife took the

7

photographs were the same as the day that Defendant was arrested. Nor can the Court be sure that Ms. Lyvers, a witness who is naturally quite biased towards Defendant, did not ensure that she was taking photographs from angles in which it was impossible to determine whether the person seated within was wearing a seatbelt. Further, as is evident in the video supplied by the United States, Defendant was wearing a light colored shirt on the day he was arrested. If the man seated in the vehicle in the photographs is wearing a dark colored shirt, a fact which definitively remains unknown to the Court, then that could provide a reason why it is more difficult to discern a seatbelt in the photographs than it was for Trooper Devasher to see that Defendant was not wearing a seatbelt. Thus, the photographs cannot overcome Trooper Devasher's uncontradicted testimony, which is corroborated by his police report. [D.E. 16-4].

Defendant also argues that the Court should suppress the evidence because Trooper Devasher was not a credible witness. The credibility of witnesses is a determination reserved for the trier of fact, which, in this case, was the Court. *United States v. Creek*, 403 F.2d 220, 220—21 (1968). Specifically, Defendant first takes issue with Trooper Devasher's failure to immediately stop Defendant if

he was able to easily discern that Defendant was not wearing a seatbelt. However an officer who has observed a traffic violation only has to make a stop within a reasonable time. *United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003). Trooper Devasher testified that he followed Defendant for "maybe ten" minutes on Nicholasville Road, and initiated the traffic stop as soon as Defendant turned onto New Circle Road, a location that he perceived as safer than stopping Defendant on Nicholasville Road. [D.E. 24 at 44]. This is a perfectly reasonable explanation, and the Court cannot see how this negatively affects Trooper Devasher's credibility.

Defendant also argues that Trooper Devasher's credibility is tarnished because he testified that when he called Trooper Harris and asked him to report to the scene, he explained all of the details of the stop over the phone. [D.E. 24 at 52]. However, Trooper Harris testified that after talking with Trooper Devasher on the day in question, he "didn't know anything about the case at all" and that he "didn't know why he stopped him." [D.E. 24 at 66]. Although Defendant indeed points out a misstatement on behalf of Trooper Devasher, Trooper Devasher's memory on what details he included in his conversation with Trooper Harris is irrelevant. Trooper Devasher had every right to

he was able to easily discern that Defendant was not wearing a seatbelt. However an officer who has observed a traffic violation only has to make a stop within a reasonable time. *United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003). Trooper Devasher testified that he followed Defendant for "maybe ten" minutes on Nicholasville Road, and initiated the traffic stop as soon as Defendant turned onto New Circle Road, a location that he perceived as safer than stopping Defendant on Nicholasville Road. [D.E. 24 at 44]. This is a perfectly reasonable explanation, and the Court cannot see how this negatively affects Trooper Devasher's credibility.

Defendant also argues that Trooper Devasher's credibility is tarnished because he testified that when he called Trooper Harris and asked him to report to the scene, he explained all of the details of the stop over the phone. [D.E. 24 at 52]. However, Trooper Harris testified that after talking with Trooper Devasher on the day in question, he "didn't know anything about the case at all" and that he "didn't know why he stopped him." [D.E. 24 at 66]. Although Defendant indeed points out a misstatement on behalf of Trooper Devasher, Trooper Devasher's memory on what details he included in his conversation with Trooper Harris is irrelevant. Trooper Devasher had every right to

call Trooper Harris and ask him to report to the scene, since no reasonable suspicion of drug or other criminal activity is necessary to conduct a dog sniff during a lawful traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (quoting *United States v. Place*, 426 U.S. 696, 707 (1983)) (internal quotation marks omitted) ("the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view . . . —during a lawful traffic stop, generally does not implicate legitimate privacy interests."). There is no indication that Trooper Devasher's testimony was anything but credible, and the Defendant's argument to the contrary fails.

Finally, the Court notes that in an earlier-submitted memorandum in support of his motion to suppress, Defendant suggested that the evidence against him should be suppressed because Trooper Devasher's decision to stop Defendant was pretextual, as the true reason for following and stopping him was his belief that Defendant possessed a firearm. [D.E. 16-1 at 4—5]. The Court notes that even if Trooper Devasher's decision to stop Defendant for a traffic violation "was a pretext to fish for evidence of other crimes, as the record suggests was the case, 'the constitutional reasonableness of traffic stops under the

Fourth Amendment does not depend on the actual motivations of the individual officers involved.'" *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Whren v. United States,* 517 U.S. 806, 813 (1996)) (internal alterations omitted). This cannot be a basis for suppression. Therefore, because the Court concludes that Trooper Devasher had probable cause to believe that a traffic violation was occurring, the resultant stop was not unlawful and did not violate the Fourth Amendment.

### B. THE STOP DID NOT LAST LONGER THAN NECESSARY TO EFFECTUATE THE PURPOSE OF THE STOP

"To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be 'limited in [both] scope and duration.'" *Everett*, 601 F.3d at 488 (quoting *Florida v. Royer,* 460 U.S. 491, 500 (1983)). Accordingly, "a stop must last no longer than is necessary to effectuate the purpose of the stop." *Id.* (quoting *Royer*, 460 U.S. at 500) (internal alterations omitted). "When the initial traffic stop has concluded, [the Sixth Circuit has] adopted a bright-line rule that any subsequent prolonging, even de minimis, is an unreasonable extension of an otherwise lawful stop." *United States v. Stepp*, 680 F.3d 651, 661–62 (6th Cir. 2012). Accordingly, if a "crafty officer . . . delay[s] writing a ticket for the initial traffic violation

until after she has satisfied herself that all of her hunches were unfounded," the extension constitutes an unconstitutional seizure, and a court should suppress any evidence discovered after the point at which the lawful stop should have concluded. *Id.* at 662.

Defendant argues that the stop should have concluded when Trooper Devasher handed Defendant his citation and told him he was free to leave. However, Defendant claims that Trooper Devasher unreasonably prolonged the stop in violation of the Fourth Amendment to allow time for Trooper Harris to arrive at the scene and conduct a dog sniff. The United States agrees that the stop ended when Trooper Devasher issued Defendant a citation and told him that he was free to leave. However, the United States argues that from this fact, the Court should conclude that Trooper Devasher did not prolong the stop, and, thus, the evidence against him should not be suppressed. The Court does not fully agree with either argument.

In general, a "stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Arizona v. Johnson*, 555 U.S. 323, 325 (2009). In this case, it is true that Trooper Devasher issued Defendant a citation and told him he was free to leave. Thus, in a typical

12

situation, the stop would have likely been considered at an end at this point.

However, this case does not present the typical situation. Because Defendant's license was expired, Trooper Devasher had every right under KRS §§ 186.410(1) and 186.620 to not only issue a citation to Defendant for driving without a valid driver's license, but also to ensure that Defendant, an unlicensed driver, did not drive away in the vehicle. Accordingly, Trooper Devasher, realizing that there was a further need to control the scene, gave Defendant the choice of calling someone to pick up the vehicle or allowing Trooper Devasher to have the vehicle towed. Because Defendant chose the former option, the stop remained ongoing until Trooper Devasher ensured that a licensed driver arrived to move Defendant's car. The fact that Trooper Devasher told Defendant that he was free to leave did not automatically, under these circumstances, mean that the stop was at its end, since the reality of the situation is that Defendant was not truly free to go anywhere until someone arrived to pick up both himself and his vehicle.

Therefore, because the Court concludes that the stop was still ongoing at the time that Trooper Harris arrived and ran his dog around the car, Trooper Devasher was fully

entitled to allow the narcotics dog to sniff the car and to subsequently search the car after the dog's alert. Quite simply, dog sniffs are not searches under the Fourth Amendment, and, thus, they require no reasonable suspicion whatsoever when conducted during a lawful traffic stop. *See United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (citing *Caballes*, 543 U.S. at 407—08) ("The Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended."); *see also Stepp*, 680 F.3d at 663 (citing *Caballes*, 543 U.S. at 409 ("If a dog sniff is conducted while someone is otherwise properly seized, such as in a lawful traffic stop, the dog sniff may render an otherwise lawful seizure unlawful only if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop.").

In support of his argument, Defendant relies extensively on *United States v. Page*, 154 F. Supp. 2d 1320 (M.D. Tenn. 2001). In *Page*, a police officer was informed by radio that a Chevy pick-up truck with a particular license plate number would be traveling through the area carrying cocaine. *Id.* at 1323. When the officer observed the truck, he began following it, saw the truck swerve

across the center line, and conducted a traffic stop. *Id.*
The truck driver produced his license, and the officer ran
a check that showed that his license was valid and that he
did not have any outstanding warrants. *Id.* After the
negative check, the officer asked the driver for consent to
search the vehicle. *Id.* at 1323—24. The driver refused at
first; however, when the officer told him that he would
allow the drug dog to run around the vehicle, the driver
changed his mind and consented. *Id.* at 1324.

Based on these facts, the district court in *Page*
determined that the officer unreasonably prolonged the
search, concluding that "any legitimate purpose of the
initial traffic stop was completed when [the officer]
received the negative response to the radio license check."
*Id.* at 1327. Moreover, because nothing happened during the
course of the stop to give the officer reasonable suspicion
to search the vehicle, the court found that the officer
lacked reasonable suspicion to extend the stop. *Id.* at
1327—28. Therefore, the court concluded that the continued
detention and dog sniff were unreasonable under the Fourth
Amendment. *Id.*

Defendant's attempts to liken this case to *Page* are
unsuccessful, because unlike *Page*, the purpose of the stop
had not ended when Trooper Harris walked his dog around

Defendant's car.  Contrary to the negative radio check in *Page*, Trooper Devasher discovered that Defendant's driver's license was expired when conducting his routine check.  Thus, whereas the officer in *Page* was required to let the defendant leave when the radio check was negative and when he had not developed reasonable suspicions that criminal activity was afoot during the stop, Trooper Devasher was obliged to detain Defendant until a licensed driver arrived to pick up Defendant and his vehicle.  Until that point, Trooper Devasher had a further need to control the scene, and Defendant was essentially not free to leave the area despite having Trooper Devasher's permission.  Therefore, because the stop did not last longer than necessary to effectuate the purpose of the stop, Defendant's motion to suppress must be denied.

**III. CONCLUSION**

Accordingly, **IT IS ORDERED** that Defendant's Motion to Suppress [D.E. 16] is **DENIED**.

This the 7th day of August, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge